**Anna POLOVCHAK and Michael Polovchak, Plaintiffs,**

v.

**Michael LANDON, District Director Immigration and Naturalization Services, et al., Defendants.**

**No. 80 C 5595.**

United States District Court, N.D. Illinois, E.D.

July 17, 1985.

described in Thomas Holt's deposition.

Harvey Grossman, Chicago, Ill., for plaintiffs.

Nancy K. Needles, Asst. U.S. Atty., Chicago, Ill., for defendants.

Robert L. Bombaugh, Lauri Steven Filppu, Marshall Tamor Golding, U.S. Dept. of Justice, Office of Immig.Lit./Civil Div., Washington, D.C., For Wm. Smith and Dist. Dir. of I.N.S.

## DECISION

McMILLEN, District Judge.

Plaintiffs, who are parents of the Intervenor Walter Polovchak, have filed a motion for summary judgment on the issue of whether or not they were deprived of due process under the Fourteenth Amendment when the defendant issued a departure control order prohibiting Walter's return to the Soviet Ukraine on January 8, 1982. Plaintiffs seek to restrain the defendants from taking any action which would prevent them from returning their son Walter to the Soviet Ukraine, and the defendants, and Walter, have been resisting this request since 1980. Plaintiffs returned to their home in the Soviet Ukraine in August 1981 but are willing to come to the United States to retrieve their son if there are no legal impediments to their doing so.

A brief history of this controversy might explain why it has become so attenuated. The Polovchak family came to Chicago to visit relatives in January 1980. When they decided to return to their home in Russia, Walter, who was then 12 years old, and his sister Natalie who was 17 years old, decided they wanted to stay in the United States and took refuge with their cousin in an apartment in Chicago.

After that, Walter was adjudged by the Circuit Court of Cook County to be a minor in need of supervision and was thus made a ward of the court and placed under the supervision of the Illinois Department of Children and Family Services. This decision was reversed by the Illinois Appellate Court for the First District and its decision was affirmed by the Illinois Supreme Court. *In re Polovchak*, 97 Ill.2d 212, 73 Ill.Dec. 398, 454 N.E.2d 258 (1983); *cert. denied*, — U.S. —, 104 S.Ct. 1413, 79 L.Ed.2d 740 (1984).

In the meantime, Walter was granted asylum by the Chicago District Director of the Immigration & Naturalization Service on July 19, 1981 and then was granted permanent resident status on October 16, 1981. The Appellate Court of Illinois released him to his parents (who had returned to Russia), and nine days thereafter I & NS issued its "departure control order" on January 8, 1982. It appears to be undisputed that this order is the only thing which prevents plaintiffs from regaining the custody of their son. It is our conclusion that the order was entered in violation of the plaintiffs' rights of due process.

Defendants have contended that some of the statements of uncontested facts stated in the plaintiffs' motion are in fact in dispute. However, defendants' contentions are not supported by sworn documents, nor are they material to our decision. It is our finding that there is no genuine issue of material fact. *Posey v. Skyline Corp.*, 702 F.2d 102 (7th Cir.1983).

The landmark decision on the requirements of due process is *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) wherein the Court said at p. 334–35, 96 S.Ct. at p. 902–03:

[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The first interest to be weighed is that of plaintiffs as parents of Walter Polovchak. It is, in fact, one of the strongest private interests in this country. On occasion, it even overrides some of the more specific rights established by our Constitution. As was said in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), at p. 650, 92 S.Ct. at p. 1212: "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection." In *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court said at p. 214, 92 S.Ct. at p. 1532: "[A] State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interests of parents with respect to the religious upbringing of their children ... ." We have no doubt that these words apply to a parent's right to bring up their children as Communists or atheists. This is a very strong interest which has been all but negated by the official action of the District Director of I & NS.

■ The private interest of the intervenor, Walter, is by its very nature considerably less than that of his parents. The intervenor has often been referred to as "little Walter" because he was only 12 years old when his parents left him behind. Due to the willingness of various parties to engage in litigation in this case, Walter will become 18 years old on October 3, 1985. This fact would no doubt increase the weight of his interest, but the question of plaintiffs' due process rights goes back to the I & NS action of granting "little Walter" a certain status in 1981. Surely a minor child of tender years does not have the right to control his own destiny, although in some cases this right is taken away from his parents and given to a court. As was said in *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) at 637, 99 S.Ct. at 3045:

[A]n additional and more important justification for state deference to parental control over children is that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."

In the foregoing case, the Court held that, when a State requires parental consent to a minor's abortion, it must also provide alternative procedures by which the minor can receive authorization for an abortion despite lack of parental consent. The Court suggested that such a proceeding need not take place in a court of general jurisdiction (p. 643 n. 22, 99 S.Ct. at p. 3048 n. 22).

■ Although the foregoing cases are not necessarily binding in this unique litigation, they do establish the superiority of a parents' rights over that of their minor child, particularly in matters involving education, religion, and nurture generally. This was pointed out by the Supreme Court in *Bellotti* at p. 642, 99 S.Ct. at p. 3047 where it said "The abortion decision differs in important ways from other decisions that may be made during minority. The need to preserve the constitutional right and the unique nature of the abortion deci-

sion, especially when made by a minor, require a State to act with particular sensitivity when it legislates to foster parental involvement in this matter." In the case at bar, neither the parents nor the intervenor were given any type of due process hearing before his parents were prevented from taking him home.

■ Therefore, certainly the first two elements of *Mathews v. Eldridge, supra,* p. 902 weigh in favor of the plaintiffs. The risk of an erroneous deprivation of their interests is great and becomes magnified by the passage of time. "Little Walter" is fast becoming an adult and has spent the last five years in the United States, apparently completely removed from any influence or control by his parents. If the I & NS decision was erroneous and arrived at through improper procedures, the effects upon Walter are perhaps irreversible.

The third *Mathews* criterion for due process is "the Government's interest," including the fiscal and administrative burdens that an additional procedural requirement would entail (424 U.S. 335, 96 S.Ct. at 903). Under 8 C.F.R. § 215.2(a) a departure control officer may temporarily detain an alien if there is reason to believe that his departure would be "prejudicial to the interests of the United States." Section 215.3 of the Regulation sets forth certain circumstances which could be deemed prejudicial to the United States. The defendants did not specify which provision of § 215.3 was being invoked, but subsection (j) is the one most applicable. It provides for detention of "Any alien, where doubt exists whether such alien is departing or seeking to depart from the United States voluntarily ... ." The alien is entitled to service of the order upon him and, at his request, a hearing before a special inquiry officer. The Regional Commissioner makes the final decision concerning the departure control order, and his decision is not appealable. No provision is made for notification of the parents of a minor child, and in their absence, there was no one interested in objecting to the departure control order in this case.

The intervenor contends that plaintiffs have failed to exhaust their administrative remedies. However, neither the statutes nor the regulations give them an administrative remedy, and this is a procedural defect itself. The alien Walter can request a hearing, and the plaintiffs attempted to object to the order after they obtained custody of their son from the Illinois Department of Children and Family Services. Thus plaintiffs did what they could, administratively.

It is not particularly surprising that the I & NS has no procedure for parents to object to or participate in the departure control order of their children. It is not often and perhaps unique that a child of the age of "little Walter" decides to remain behind when his family returns home. One even must become a little curious concerning what kind of influences may have impelled him to do this or whether it was entirely his own free choice.

To adopt a procedure or regulation to cover this situation would impose no perceptible burden on the government, nor would the hearing, if any. It is too late to hold such a hearing today, since the intervenor Walter is now almost 18 years old and his reasons for seeking asylum in the United States have been blurred if not changed over the years. The only way to remedy the lack of due process which was imposed upon his parents, the plaintiffs, is to grant their motion for summary judgment.

The foregoing decision will stand as a declaratory judgment in favor of plaintiffs in accordance with Fed.R.Civ.P. 52. Plaintiffs may serve and file an injunction order against the defendants and the intervenor on Monday, July 29, 1985 at 11:00 o'clock a.m.